UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

CONGELADOS DEL CIBAO,

    Plaintiff,

vs.                                          Civil Action No.: 119-cv-07596-GBD

3 KIDS CORPORATION, and           **PLAINTIFF'S FIRST SET OF**
DOMINICK CHIAPPONE, in his        **INTERROGATORIES**
individual capacity,

    Defendants.

_____

Plaintiff, CONGELADOS DEL CIBAO ("Congelados"), by and through their undersigned counsel, for their Complaint against Defendants Dominick Chiappone ("Chiappone"), individually, and 3 Kids Corporation ("3 Kids Corp."), states as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff for (i) Defendants' breach of a contract in excess of $1.2 million dollars in violation of New York Uniform Commercial Code § 2-709; (ii) Defendants becoming unjustly enriched at the expense of Plaintiff; and/or (iii) Defendants committing fraudulent inducement by misrepresenting the financial position of 3 Kids Corporation and misrepresenting that Plaintiff would be compensated for various agreements.

2. Defendants have acknowledged the amounts due and owing to Plaintiff on multiple occasions, but have made no efforts to repay the acknowledged debt to the Defendants.

**PARTIES, JURISDICTION, AND VENUE**

3. Plaintiff Congelados is a Dominican Republic corporation with its principal place of business at Calle Capotillo #48 in Santiago, Dominican Republic.

4. Defendant Chiappone, an individual, is the CEO of 3 Kids Corp. Upon information and belief, Chiappone resides in 26 Durland Road, in Florida, New York. Defendant 3 Kids Corp. is a non-publicly traded New York domestic business corporation engaged in the business of processing and distributing seafood with its principal office located at 360 Crystal Road located in Middletown, New York.

5. Upon information and belief, Defendant Chiappone was, at all times relevant to this matter, CEO of 3 Kids Corp. and exercised control over all aspects of the day-to-day functions of the corporation, including, but not limited to, operational control over the corporation and directly managing and directing business operations.

6. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. §1332 (*i.e.* diversity) as Plaintiff Congelados and Defendants 3 Kids Corp. and Chiappone are citizens of different states, and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), excluding interests and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF THE CLAIM

8. On or about November 13, 2014, the parties entered into a business agreement in which Plaintiff would sell and deliver approximately fifty thousand (50,000) pounds of frozen seafood (*i.e.* lobster tails) to Defendant in exchange for payment. Plaintiff would ship from Rio Haina, Dominican Republic, to Brooklyn, New York via vessel Spica 189N.

9. Since that date, Plaintiff and Defendant engaged in numerous similar agreements in which Defendant would purchase large quantities of frozen seafood from Plaintiff.

10. As evidenced by the numerous invoices, Plaintiff and Defendant agreed to payment terms for these transactions requiring Defendants to pay fifty percent (50%) of the total invoice amount immediately to Plaintiff, with the remaining fifty percent (50%) of the contract amount due after receipt of the corresponding documentation confirming the receipt of the goods. The invoices contain the names and address of the parties, the date of shipment, a description and price of the goods.

11. Upon receipt of the frozen lobster tails in Brooklyn, New York, Defendants would submit the listed price on the invoices via International High Wire to Plaintiff's bank account and reference the invoice number for each Wire.

## INVOICE #79

12. After several transactions between the parties that were completed without issue, issues related to non-payment by Defendants arose in connection with Shipment/Invoice #79.

13. On or about October 20, 2016, Plaintiff shipped approximately 27,206 pounds of frozen lobster tail from Rio Haina, Dominican Republic to Brooklyn, New York in exchange for payments totaling $346,326.25. The terms of this transaction were the same as all prior transactions between the parties.

14. The 27,206 pounds of frozen lobster tail was delivered and accepted by Defendants in Brooklyn, New York.

15. Due to alleged financial problems, Defendants were unable pay Invoice #79 in accordance with the terms previously agreed to by the parties and requested that Plaintiff allow Defendants to pay the outstanding balance of $346,326.25 over several partial payments.

16. In light of the parties preexisting business relationship, Plaintiff agreed to Defendants' request and entered into an agreement whereby Defendants would pay off the balance owed on Invoice #79 in several installment payments.

17. Between September 14, 2016 to May 30, 2018, in accordance with the agreement reached by the parties, Defendants made several partial payments to Plaintiff towards the balance owed on Invoice #79.

18. Defendants, however, did not pay Plaintiff the full amount owed in connection with Invoice #79. At present, Defendants owe Plaintiff a balance of $56,326.25 related to this transaction.

### INVOICE #92

19. On or about April 14, 2017, Plaintiff shipped approximately 41,990 pounds of frozen lobster tail from Rio Haina, Dominican Republic to Brooklyn, New York in exchange for payments totaling $573,168.96.

20. Plaintiff agreed to undertake and was specifically induced to enter into the transaction with Defendants reflected by Invoice #92 based on the explicit promise by the Defendants that the outstanding balance that remained due and owing on Invoice #79 would be paid in full.

21. Per Invoice #92, Plaintiff delivered and Defendant received all of the 41,990 pounds of frozen lobster tail.

22. Despite receiving $573,168.96 worth of lobster as requested, Defendants have only paid Plaintiff approximately $12,000 towards Invoice #92.

23. Similar to Invoice #79, Defendants requested that Plaintiff allow them to pay the outstanding balance owed on Invoice #92, an amount in excess of $561,000, in periodic payments of a specified period of time. In light of the parties preexisting business

4816-8775-7974, v. 4

relationship, Plaintiff agreed to accept payment of the balance owed on Invoice #92 in payments over time.

### INVOICE #94

24. On or about June 29, 2017, Plaintiff shipped approximately 41,787 pounds of frozen lobster tail from Rio Haina, Dominican Republic to Brooklyn, New York in exchange for payments totaling $591,291.71.

25. Plaintiff agreed to undertake and was specifically induced to enter into the transaction with Defendants reflected by Invoice #94 based on the explicit promise by the Defendants that the outstanding balance that remained due and owing on Invoice # 79 and Invoice #94 would be paid in full.

26. As with all prior transactions between the parties, Defendants received and accepted the contents shipped to them pursuant to Invoice #94.

27. Despite accepting the lobster provided by Plaintiff pursuant to Invoice #94, to date, Defendants have failed to pay anything towards the balance owed on this transaction.

### OUTSTANDING BALANCE

28. On or about September 27, 2017, Plaintiff e-mailed Defendants a balance of Defendants' account reflecting the outstanding amounts due and owing for Invoices #79, #92, and #94.

29. Defendants responded to the email and acknowledged that the balances for Invoice #79 and #92 ($56,326.25 and $561,138.06, respectively) were correct. However, Defendants sought a revision of Invoice #94 from $591,291.71 to $570,398.01 due to slightly lower weight of the seafood received.

30. On or about January 24, 2018, Plaintiff e-mailed Defendant Chiappone requesting payment for the aforementioned invoices. On that same date, Defendant Chiappone acknowledged the delay of payment.

31. During the summer of 2018, representatives of Plaintiff met with the Defendants at the headquarters of Defendant 3 Kids Corp.

32. At this meeting, Defendants again acknowledged that they owed Plaintiff in excess of $1.2 million for balances due on Invoices #79, #92 and #94.

33. At this meeting, Defendant Chiappone indicated that he would begin to make payments towards the balance owed to Plaintiff as soon as possible.

34. In light of the parties' preexisting business, and in an effort to give Defendants every opportunity to salvage such relationship, Plaintiff agreed to evaluate a repayment plan from Defendants before proceeding to litigation.

35. Despite assurances from Defendant Chiappone, no repayment plan was ever provided to Plaintiff.

36. Pursuant to their agreements, Defendants owe, and acknowledge owing, at least $1,208,756.02 to Plaintiff, but have refused to pay Plaintiff anything towards this outstanding balance.

## COUNT I – BREACH OF CONTRACT

37. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1 through 36 above and incorporates them by reference.

38. Since November of 2014, a contract between Plaintiff and Defendants exists based on the parties' conduct and numerous invoices from 2014 to 2018.

39. Plaintiff would routinely provide large quantities of frozen seafood from the Dominican Republic, arrange for transportation of the goods to Brooklyn, New York, complete and file the necessary Importer Filing paperwork, produce Bills of Lading, and create and serve invoices on Defendants for the goods rendered.

40. In exchange for Plaintiff delivering the frozen seafood, Defendants would routinely and regularly assent to the requested price for the goods as specified in the invoices generated by Plaintiff, as evidenced by the numerous payments Defendants made to Plaintiff referencing the invoices for frozen seafood.

41. Each invoice specified the quantity of frozen seafood, the price of the frozen seafood, the method of delivery, the date of delivery, and when specific payments were due to be paid by Defendants upon receipt of the confirming documentation.

42. Defendants, by their own admission, stated that Invoices #79 and #92, which amount to $617,464.31, are correct, due, and owed to Plaintiff.

43. Defendants admit that revised Invoice #94, totaling $570,398.01, is due and owed to Plaintiff.

44. Although Plaintiff has repeatedly demanded payment, Defendants have engaged in a knowing and intentional breach of the contract by refusing to pay the outstanding amounts owed pursuant to Invoices #79, #92, and #94.

45. The Defendants have defaulted on the payments due to the Plaintiff, leaving a balance due and owing in the sum of at least $1,208,756.02, with no payments made for approximately one (1) year.

46. Defendants are liable to Plaintiff under Section 2-709(1) of the New York Uniform Commercial Code for the unpaid balance of the outstanding invoices with accrued late fees,

together with any incidental damages incurred by Plaintiff as a result of Defendants' breach.

47. Accordingly, by reason of the breach of the contract by the Defendants, Plaintiff is entitled to an award of damages in an amount to be determined at trial, but no less than sum of $1,208,756.02, excluding interest.

## COUNT II – QUANTUM MERUIT & UNJUST ENRICHMENT

48. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1 through 47 above and incorporates them by reference.

49. Between 2014 and 2018, Plaintiff in good faith provided Defendants with bulk orders of frozen seafood.

50. For each shipment during the aforementioned timeframe, Defendants accepted the goods upon their arrival in Brooklyn, New York.

51. Upon the delivery of each shipment, Plaintiff had a reasonable expectation of payment for the service provided, and Defendants routinely furnished all payments owed in accordance with the Invoices generated by Plaintiff for multiple transactions, until Invoice #79.

52. In the event of a discrepancy or issue with the frozen seafood, Defendants contacted Plaintiff for a revised Invoice, which would be done by Plaintiff without question.

53. After Invoice #79, Defendants failed to pay the agreed upon compensation to Plaintiff, which continued for Invoices #92 and #94.

54. Plaintiff reasonably expected to receive compensation for Invoices #79, #92, and #94 based on Plaintiff providing Defendants the agreed upon goods.

55. Plaintiff reasonable expected to receive compensation for the aforementioned invoices based on Defendants previously sending the full payments as requested by Plaintiff's previous Invoices over the course of several years.

56. Defendants have benefited at the Plaintiff's expense by acquiring approximately 110,983 pounds of frozen seafood pursuant to the shipments listed in Invoices #79, #92, and #94.

57. Despite Defendants acquiring these goods and acknowledging the payment amounts requested by Plaintiff were correct, Defendants refuse to compensate Plaintiff.

58. Under the circumstances, equity and good conscience demand that Defendants give Plaintiff restitution for the benefits provided to Defendant, in the amount of the reasonable value of the goods.

59. The reasonable value of the goods is $1,208,756.02.

60. Accordingly, Plaintiff is entitled to an award of damages in an amount to be determined at trial, but no less than sum of $1,208,756.02, excluding interest.

## COUNT III – FRAUD IN THE INDUCEMENT

61. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1 through 60 above and incorporates them by reference.

62. As described herein, Defendant Chiappone knowingly made numerous misrepresentations of material fact to Plaintiff or omitted to state facts regarding Plaintiff's compensation for Invoices #79, #92, and #94.

63. Defendant Chiappone affirmatively mispresented and/or did not disclose sufficient facts to render non-misleading his statements regarding Defendant 3 Kids' Corporation's financial position and ability to compensate Plaintiff for Invoices #79, #92, and #94.

64. Defendant Chiappone knew, or reasonably should have known, that his representations were materially false or misleading, or that omission of material facts rendered such representations false or misleading. Defendant Chiappone also knew, or had reason to know, that his misrepresentations and omissions would induce Plaintiff into entering into Invoices #92 and #94.

65. Defendant Chiappone's misrepresentations or omissions were material and a substantial factor in Plaintiff entering into Invoice #92 and #94.

66. Defendant Chiappone intended his misrepresentations or omissions to induce Plaintiff to enter into the Invoices #92 and #94, or had reckless disregard for same. But for these misrepresentations and/or omissions, Plaintiff would not have entered into Invoices #92 and #94.

67. Plaintiff was justified in relying on Defendant Chiappone's misrepresentations.

68. Each and every misrepresentation made by Defendant Chiappone was false and untrue and known by Defendant Chiappone to be so at the time the statement was made and all of Defendant Chiappone's misrepresentations and omissions were intentionally and fraudulently made with the intent to cheat and defraud Plaintiff. Defendant Chiappone knew that Defendant Chiappone had no intention of performing his promises to Plaintiff.

69. By reason of the false and fraudulent statements made by Defendant Chiappone to Plaintiff and the deceptions and fraud practiced by Defendant Chiappone upon Plaintiff, Plaintiff was fraudulently induced into entering into the Agreements dated April 14, 2017 and June 29, 2017 (i.e. Invoices #92 and #94).

70. Had they not been fraudulently induced to do so, Plaintiff would not have entered into the agreements nor would they have shipped approximately 83,777 pounds of frozen lobster

to Defendants. The aforesaid conduct of Defendant Chiappone was willful, grossly malicious, and reckless and was calculated to cause and did cause harm to Plaintiff who has no adequate remedy at law

71. In addition, as a result of the foregoing, Plaintiff has sustained damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests that this Court grant it judgment against Defendants and award Plaintiff the following relief

- A. compensatory damages in the amount of $1,208,756.02 for Defendants' breach of a contract, *quantum meruit*, or unjust enrichment;

- B. award punitive damages in Plaintiff's favor and against Defendants because of Defendant's full knowing and intentional breach of the contract;

- C. award punitive damages in Plaintiff's favor and against Defendants because of Defendant's fraudulent inducement;

- D. award Plaintiff's costs and reasonable attorneys' fees; and

- E. granting Plaintiff such other and further relief as this Court deems just and proper.


Dated: August 12, 2019

                                              SCARINCI HOLLENBECK
                                              Attorneys for Plaintiff
                                              3 Park Avenue
                                              New York, New York 10016
                                              Tele: 212-286-0747

                                              By:   s/*Gregg H. Hilzer, Esq.*
                                                      GREGG H. HILZER


To:    3 Kids Corporation
        360 Crystal Run Road
        Middletown, New York 10941

4816-8775-7974, v. 4