UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                       :

CONGELADOS DEL CIBAO,                   :

                                         :

                   Plaintiff,               :

                                         :                     19-cv-7596 (LJL)

            -v-                         :

                                         :             MEMORANDUM &
3 KIDS CORPORATION and DOMINICK    :                  ORDER
CHIAPPONE,                                   :

                                         :

                   Defendants.          :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Before the Court are three motions:  Plaintiff Congelados del Cibao ("Plaintiff") moves

pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4) to amend its complaint, Dkt.

No. 51; Defendants Dominick Chiappone ("Chiappone") and 3 Kids Corporation ("3 Kids," and

collectively with Chiappone, "Defendants") move pursuant to Federal Rule of Civil Procedure

15(a)(2) and Local Rule 6.1(b) to amend their answer, Dkt. No. 58; and Defendants request a

discovery conference and move to compel discovery, Dkt. No. 64.  Each party opposes the

motions of the other party.

       Plaintiff moves to amend the complaint to add claims for account stated and piercing of

the corporate veil to impose personal alter ego liability of Chiappone for the debts of 3 Kids.

The account stated claim refers to invoices #79, # 92, and #94 alleged to create contractual

obligations elsewhere in the complaint, and it alleges that the invoices constitute a true and

accurate statement of account as between Plaintiff and Defendants and that there is a balance due

on the account stated of $1,208,756.02 that Defendants have failed to pay.  Dkt. No. 51-2

¶¶ 72-77.  The claim for piercing of the corporate veil alleges that at the time 3 Kids ordered the

goods reflected in the invoices, it failed to follow any of the formalities of a legitimate

corporation, and that Chiappone exercised complete domination and control over 3 Kids, as well

as several other corporations.  Plaintiff alleges that Chiappone used these companies "as

corporate shells to hide assets out of the reach of creditors," and that he used corporate funds of 3

Kids for personal expenses and purchases to defraud 3 Kids creditors and business customers.  It

also alleges that Defendants commingled corporate and personal funds, that 3 Kids was used to

advance Chiappone's personal interests, that Chiappone was an alter ego of 3 Kids, and that

Chiappone operated 3 Kids to conceal or strip corporate assets to enrich himself.  *Id.* ¶¶ 78-91.

Plaintiff's motion is denied.  This case was filed on August 14, 2019.  Dkt. No. 1.  The

case management plan provided that "[n]o amendment to the pleadings will be permitted [after]

March 10, 2020."  Dkt. No. 14.  Plaintiff's motion to amend was filed on August 30, 2021.

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only

for good cause."  Plaintiff fails to show good cause for the amendment which is out of time and

which would cause substantial prejudice to Defendants.  The Court has reviewed the evidence

and the pleadings with respect to the alter ego claims.  The pleadings are based on the

substantive concern that 3 Kids ceased doing business in 2020.  But that fact does not itself

justify a late amendment adding an alter ego claim against Chiappone.  The deposition testimony

establishes that 3 Kids had a board of directors which held meetings.  Dkt. No. 51-4 at 8; *see also*

Dkt. No. 58-3, Ex. H (shareholder meeting minutes).  The documentary evidence reflects no

more than that 3 Kids Corporation made payments to Chiappone which Chiappone then used for

his personal purposes.  To the extent that the proposed amendment is based on the conclusory

allegations of dominance and control of a small business, there is no reason that the amendment

could not have been made earlier.  To the extent it is based on the fact that 3 Kids Corporation

made payments to Chiappone, those facts alone do not establish a plausible inference sufficient

to support an alter ego claim.  Finally, Plaintiff admits that allowance of the amendment would

result in substantial additional discovery in this case where discovery is already closed.  If the

Court were to grant the motion to add the alter ego claim, Plaintiff states it would be necessary to

obtain production of information regarding Chiappone's sources of income, his personal finances

and tax returns; to complete depositions on documents and information produced after the

respective depositions of each defendant; and to conduct non-party discovery.  Dkt. No. 51-1 ¶ 7.

With respect to the account stated claim, Plaintiff articulates no reason why that claim could not

have been asserted earlier.  As a result, Plaintiff's motion to amend the complaint is denied both

because Plaintiff has not demonstrated good cause for the out-of-time amendment and because

the amendment would cause prejudice to Defendants.

Defendants' motion to amend is also denied.  Defendants seek leave to amend their

answer to add facts in support of the affirmative defenses of bad faith, unclean hands, fraud, and

illegality.  Defendants claim that newly produced discovery calls into question whether Plaintiff

legally caught the product that was delivered to Defendants and whether Plaintiff paid taxes and

fees on the lobster tails that were delivered.  The proposed amendment would add allegations

that (1) Plaintiff misrepresented the quality of the product that it provided and overstated its

value; (2) Plaintiff harvested and shipped the product in violation of the laws of the United States

and the Dominican Republic because the product was caught outside the time frame allowed by

Dominican Republic law, because Plaintiff failed to pay the necessary fees and taxes due under

local law, and because the product was illegally caught and shipped in violation of the federal

Lacey Act; and Plaintiff passed on fraudulent and inflated costs for the value of the product by

requiring 3 Kids to pay a $0.50 per pound tax that was never paid to any agency in the

Dominican Republic.  Dkt. No. 58-3, Ex. L, Affirmative Defenses ("Aff. Def.") ¶¶ 2-8.

Defendants' motion was filed on August 30, 2021.  Dkt. No. 51.  The "good cause" standard of Rule 16 also applies to Defendants' motion.  Fed. R. Civ. P. 16(b)(4).  Defendants fail to satisfy that standard.  Although they rely on purportedly newly-discovered evidence, Plaintiff points out in its reply memorandum that Defendants have had this evidence since at least January 2021, eight months before they filed this motion to amend.  Dkt. No. 61-1 at 13-14. Defendants do not address good cause or the reason for their delay at all in their sur-reply, and the Court agrees with the Plaintiff that there is no good cause for Defendants eight-month delay in filing this motion.  Therefore, the motion to amend is denied for that reason alone.

Moreover, several of the claims also appear to be futile or redundant.  First, the amendment does not plead a claim for fraud.  *See, e.g.*, *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (1987) (holding that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated); *see also Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (holding fraud claim redundant of breach of contract claim under New York law).  To the extent that Defendants complain about the quality of the goods or that Plaintiff also breached the agreement between the parties, that claim sounds in the provisions of the Uniform Commercial Code with respect to non-conforming goods or for a set-off following the acceptance of nonconforming goods, *see* U.C.C. §§ 2-606, 2-714, 2-717, which is already pleaded in the answer as an affirmative defense, *see* Dkt. No. 12, Aff. Def. ¶ 14.

Second, Defendants complain that Plaintiff acquired the lobster in violation of United States and Dominican Republic law.  They argue that Plaintiff's conduct in fishing and shipping the lobster at issue violates the Lacey Act and thus renders Plaintiff's contracts with Defendants illegal and void ab initio.  The Lacey Act combats illegal trafficking of wildlife, fish, and plants.  16 U.S.C. §§ 3371-3378.  One provision of the Lacey Act makes it unlawful to "important, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold

in violation of any law, treaty, or regulation of the United States or in violation of any Indian tribal

law." *Id.* § 3372(a)(1).  Other provisions make it unlawful "to import, export, transport, sell, receive,

acquire, or purchase in interstate or foreign commerce (A) any fish or wildlife taken, possessed,

transported, or sold in violation of any law or regulation of any foreign law," *id.* § 3372(a)(2), and

"within the special maritime and territorial jurisdiction of the United States (A) to possess any fish or

wildlife taken, possessed, transported, or sold in violation of any foreign law or Indian tribal law," *id.*

§ 3372(a)(3).  The Lacey Act carries with it civil and criminal penalties.  *Id.* § 3373.  Section 3375 of

the Act provides for federal jurisdiction and allows for rewards to persons who furnish information

that leads to an arrest, conviction, penalty assessment or forfeiture.  *Id.* § 3375.  The Act does not

contain any express private cause of action.

The proposed amended answer, however, does not plead facts to support the claims of a

violation of the Lacey Act or that Plaintiff engaged in illegal conduct.  It simply pleads the

conclusion that Plaintiff "failed to pay the legally required fees and taxes in the Dominican

Republic in direct violation of the laws of both the Dominican Republic and the United States …

and shipped illegally caught product in violation of the Lacey Act of the United States of

America."  Dkt. No. 58-3, Ex. L ¶ 8.  It adds that "the product was caught outside of the time

frame allowed by Dominican law and [Plaintiff] failed to pay the necessary fees and taxes due

under Dominican law."  *Id.* ¶ 4.  No facts are pled to support those conclusions.  *See Town &*

*Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 3472597, at *10 (S.D.N.Y. June 25,

2020 (holding that "a party must support affirmative defenses 'with some factual allegations to

make them plausible'" (quoting *GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98

(2d Cir. 2019))).  Defendants attempt to supplement the pleading with exhibits attached to a

certification of counsel.  Dkt. No. 58-1.  Even assuming the Court were to deem that evidence to

be incorporated into the complaint, that evidence does not go as far as Defendants would take it

or establish that Plaintiff illegally caught or shipped the product.  Defendants claim that their

evidence includes text messages from "Plaintiff's owner inform[ing] Defendant 3 Kids

Corporation on June 22, 2017, that the product that was going to be sent was 'fresh product.'"

Dkt. No. 58-1 at 3 (citing Ex. J).  However, the text messages in Exhibit J state only:  "This is the

new product very good quality and size."  Dkt. No. 58-3, Ex. J.  There is no reference in the

messages to "fresh product," contrary to Defendants' claim.  The reference to "the new product,"

in June, in light of the fact that these parties had done business and discussed product before,

does not support an inference that the product was fished between February 28 and June 30, *see*

Dkt. No. 59, in violation of Dominican law.  With respect to the claim that Plaintiff failed to pay

taxes and fees due in the Dominican Republic or failed to obtain the required letters of no

objection and export permits, Defendants rely exclusively on the certification of Emmanuel

Rosario, an attorney in the Dominican Republic who asserts that he requested documentation

from CODOPESCA, the Dominican Republic Department of Fisheries, and that "CODOPESCA

did not find any record of any documentation that would support Plaintiff's proofs or the

testimony of Pedro Nunes in so far as his representation that the required fees and taxes were

paid, whether by him or his agents."  Dkt. No. 58-3, Ex. D ¶ 4.  Rosario asserts that "[b]ased on

CODOPESCA's response it is my professional opinion that the documents submitted by Plaintiff

are fraudulent."  *Id.*  Defendants' counsel reiterates this in his certification, which refers to "the

letter attached to Mr. Emmauel's certification."  Dkt. No. 58-2 ¶ 4.  Rosario's certification as

provided to the Court in Exhibit D does not include any attachments.  *See* Dkt. No. 58-3 at 25-

28, Ex. D.  Defendants provide the referenced letter for the first time in their sur-reply, Dkt. No.

65-2, Ex. B.  However, Plaintiff testified that there is no tax paid to CODOPESCA, only a permit

fee, and that a broker, Mr. Reyes, deals with paying all fees to CODAPESCA.  Dkt. No. 58-3,

Ex. E.  The evidence is ambiguous at best.

Defendants' allegations of unlawful conduct in obtaining and shipping the lobster at issue,

even if they were well pled, do not convert an otherwise lawful contract for shipment of goods into

an inherently "unlawful bargain" for which "a party . . . cannot recover damages for its breach."

*Lowenschuss v. Kane*, 520 F.2d 255, 266 (2d Cir. 1975); *see also* Restatement (First) of Contracts

§ 598.  "[I]t may be broadly said that a bargain will be declared illegal or unenforceable if: 1. The

consideration for a promise in it is an illegal act or forbearance; 2. It is illegal to make some promise

in the bargain, even though what is promised might be lawfully performed; 3. Some performance

promised is illegal; 4. A provision is included for a condition in violation of law . . . ."  Williston on

Contracts § 12.1; *see also* Restatement (First) of Contracts § 512 (listing the same categories).  The

Restatement (First) of Contracts goes into detail about various specific kinds of illegal bargains,

including bargains in restraint of trade, bargains regarding illegal wagers, bargains that involve

usury, and bargains prohibited by statute, among others.  These examples reinforce the fact that the

kind of bargains contemplated by this doctrine are those that are inherently unlawful, not those that

may be fulfilled via unlawful means.  The bargain at issue here—the sale of lobster tail in exchange

for payment—is not a bargain in which the consideration or performance promised is inherently

unlawful, or the promise itself is unlawful.  Rather, it is a standard and lawful agreement for the sale

and delivery of goods, which Defendants assert that Plaintiff fulfilled via unlawful means, including

by not obtaining required export licenses or paying required taxes and fees under Dominican law.

But "[t]he fact that a party bargains to do an act which will be illegal unless governmental permission

is obtained does not make such bargain illegal."  *May Dept. Stores Co. v. First Hartford Corp.*, 435

F. Supp. 849, 853 (D. Conn. 1977) (quoting 6 Williston on Contracts, § 1767, at 5019 n.3 (1938)).

Moreover, even when a bargain does inherently violate a statute, "[a]s a general rule . . . ,

forfeitures by operation of law are disfavored," particularly where a defaulting party seeks to raise illegality as "a sword for personal gain rather than a shield for the public good." *Charlebois v. Weller Assocs.*, 531 N.E.2d 1288, 1292 (N.Y. 1988). "Allowing parties to avoid their contractual obligation is especially inappropriate where there are regulatory sanctions and statutory penalties in place to redress violations of the law." *Lloyd Capital Corp. v. Pat Henchar, Inc.*, 603 N.E.2d 246, 248 (N.Y. 1992). As such, even assuming the truth of Defendants' complaints of illegality in the fishing and shipment of the lobster, asserting illegality as an affirmative defense to Plaintiff's recovery in this action is futile.

The motion to compel at Docket Number 64 is denied without prejudice. The requested discovery is late and disproportionate to the needs of the case under Rule 26(a). In addition, given the history of the case, the Court would have expected counsel to do the courtesy of picking up the phone and informing his adversary of the deposition notice rather than having an assistant (previously unknown to the case) send an email the Friday before Labor Day weekend. Defendant's conduct smacks of gamesmanship. The motion is denied.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 51, 58 and 64.

SO ORDERED.

Dated: October 6, 2021
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge